IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NAKISHA N. HERRING,**

    **Plaintiff,**

                                      **Civil Action 2:12-cv-982**
   v.                                    **Judge Gregory L. Frost**
                                        **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Nekisha Herring, brings this action under 42 U.S.C. §§ 405(g) and 1338(c)(3) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits, child disability benefits, and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Motion for Remand (ECF No. 11) and the Commissioner's Response (ECF No. 2).  For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's Motion for Remand and **AFFIRM** the Commissioner's decision.

**I.**

On May 20, 1988, the Social Security Administration found Plaintiff, then a child, disabled with the onset date of February 1, 1988.  (R. at 17.)  In 2001, when Plaintiff was eighteen, an administrative law judge found that Plaintiff remained disabled as a result of mental

1

impairments that medically equaled Listings 12.04 and 12.05 of 20 C.F.R. Part 404.  (R. at 22.)  On March 31, 2005, Defendant concluded that Plaintiff's disability ended as of January 6, 2005, citing her failure to cooperate with the disability determination process.  (*Id*.)  Upon reconsideration, a State Agency Disability Hearing Officer upheld the nondisability determination.  (*Id*.)  Plaintiff sought review by an administrative law judge and testified at a January 14, 2009 hearing.  (*Id*.)  Administrative Law Judge Thomas Piliero (the "ALJ") upheld the determination that Plaintiff's disability ended on January 6, 2005.  (*Id*.)  Plaintiff appealed and subsequently filed a protective application for child's insurance benefits beginning April 1, 2000.  (*Id*.)  The Appeals Council remanded the case and directed the ALJ to consider the treating source opinion of Dr. Alasyali; obtain additional evidence concerning Plaintiff's mental impairments; consider whether Plaintiff's medical impairments had improved; support his residual functional capacity ("RFC") findings with record evidence; and if warranted, to expand the record and obtain supplemental evidence from the vocational expert.  (R. at 18.)  Following the Appeals Council's remand, the ALJ held a hearing on December 15, 2010.  (R. at 392, 521–43.)  Plaintiff waived her appearance at this hearing.  (R. at 523.)  Impartial vocational and medical experts appeared and testified.  (R. at 17, 534–42.)

On February 22, 2011, the ALJ issued a decision affirming the earlier determination that Plaintiff's disability ended on January 6, 2005.  (R. at 14–32.)  In this decision, the ALJ found that Plaintiff had no severe physical impairments, but continued to suffer from a number of severe mental impairments, including borderline intellectual functioning, an affective disorder, a drug abuse disorder, and anxiety and personality-related disorders.  (R. at 22–23, 26.)  He then concluded that Plaintiff has not had an impairment or combination of impairments that met or medically equaled one of the listed impairments since January 6, 2005.  (R. at 23.)  In connection

2

with this determination, the ALJ "accepted and adopted" the opinions of Drs. Wyatt and Madden, explaining that their opinions were "consistent with and supported by the medical record in its entirety."[1] (*Id.*) Drs. Wyatt and Madden both opined that Plaintiff's impairments did not meet or medically equal Listing 12.05(C). The ALJ noted that Dr. Wyatt had testified that despite Plaintiff's low IQ scores, she did not have the requisite functional deficits and that she had shown considerable improvement in adaptive functioning since she was a child. (*Id.*) He further noted that Dr. Madden had likewise concluded that Plaintiff's condition had improved and that he challenged the validity of Plaintiff's prior IQ scores. In support of his adoption of Drs. Wyatt's and Madden's opinions, the ALJ emphasized Plaintiff's level of adaptive functioning as follows:

> The claimant has reported that she is independent in her activities of daily living, attends church on Sundays, enjoys socializing with friends, is busy with leisure and social activities, worked at least three years as an exotic dancer, remembers everything that she does, enjoys drawing and sewing, reads books, and cleans laundry, cooks, cleans house, washes dishes, and takes out the trash. In March 2008, she reported that she does homework, draws, watches movies, looks at magazines, reads books, does chores, cooks, grocery shops, uses public transportation, sings, sews costumes, dances, and socializes with friends. She completed her own disability forms. She reported to Dr. Hammerly that she has lived on her own before and looks at magazines, draws, talks to friends, spends time with her family, goes out to places, and does all household duties. The claimant testified, at the prior hearing held in January 2009, that she has worked as a fast food restaurant cook, grocery shops, goes to the library to read magazines, and uses a computer. She said that she writes in a personal journal. She said that she is currently engaged in home-schooling by studying reading, math, and social studies, and has passed a related examination. She said that she travels throughout the city on a bus by herself without difficulty. Consistent with this evidence, the undersigned finds that she no longer meets or equals the requirements of the "paragraph C" criteria in Listing 12.05(C).

(R. at 25 (internal citations to the Record omitted).)

---

[1] Because the analysis in this case turns on whether Plaintiff has adduced new, material evidence, and not on the weight of the medical evidence, the Court does not discuss the medical records with any specificity.

>The ALJ then set forth Plaintiff's RFC as follows:
>
>[Plaintiff] has had the residual functional capacity to perform simple repetitive tasks in predictable work environments without significant change in routine, unless explained. She is able to work at a moderate pace with limited contact with the public.

(R. at 26.) In connection with his RFC determination, the ALJ discussed the record evidence, including opinion evidence, Plaintiff's symptoms, and Plaintiff's testimony. The ALJ again discussed Plaintiff's functional ability, indicating that the findings contained within his decision, including his Listing 12.05(C) determination, were "grounded on [Plaintiff's] functional ability." (R. at 29.)

The ALJ relied upon the vocational expert's testimony to conclude that as of January 6, 2005, Plaintiff could perform her past relevant work as a fast food worker and a stocker as well as other jobs existing in significant numbers in the national economy. (R. at 30.) The ALJ therefore concluded that Plaintiff's disability ended on January 6, 2005. (R. at 31.) The ALJ's decision became final and appealable in August 2012, when the Appeals Council denied Plaintiff's request for review. (R. at 8.)

Plaintiff now seeks an order remanding this action pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of Dr. Slater's November 12, 2010 psychological evaluation. Plaintiff maintains that remand is proper because Dr. Slater's evaluation was not available at the time of the administrative proceeding and because the IQ scores reflected within the evaluation fall in the 60–70 range contemplated under Listing 12.05(C). Defendant opposes remand, asserting that the Dr. Slater's November 12, 2010 psychological evaluation is immaterial.

## II.

As set forth above, Plaintiff seeks remand for consideration of new evidence under sentence six of 42 U.S.C. § 405(g). Sentence six provides in relevant part as follows:

4

> The Court may, on motion of the Secretary made for good cause shown before he [or she] files his [or her] answer, rem and the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . .

42 U.S.C. § 405(g). "Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala v. Shaefer*, 509 U.S. 292, 297 n.2 (1993) (citations omitted). The requirements that the evidence be "new" and "material" and that "good cause" be shown for the failure to present the evidence to the ALJ have been defined by the United States Court of Appeals for the Sixth Circuit as follows:

> For the purpose of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. The burden of showing that a remand is appropriate is on the claimant.

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

### III.

The parties do not dispute that Dr. Slater's November 12, 2010 psychological evaluation is "new" as contemplated in 42 U.S.C. § 405(g). The issue before the Court, then, is whether the evaluation is "material" under § 405(g). Plaintiff contends that she has demonstrated the materiality prerequisite for a § 405(g) sentence-six remand because Dr. Slater's evaluation confirms the validity of prior IQ testing results such that the IQ requirement of Listing 12.05(C) is satisfied. (Pl.'s Statement of Errors 2, ECF No. 11.) Closer scrutiny of Listing 12.05(C)'s

requirements and the ALJ's decision, however, fails to support a finding that there exists a reasonable probability that the ALJ would have reached a different disposition upon consideration of the evaluation.

Even if Dr. Slater's evaluation supplied evidence demonstrating that Plaintiff satisfied an essential element of Listing 12.05(C), the Undersigned cannot conclude that there is a "reasonable probability" that the ALJ would have reached a different conclusion regarding that Listing if he had considered the evaluation. Listing 12.05(C), which covers mental retardation (now referred to as intellectual impairment), contains *four* requirements. The ALJ's Listing 12.05(C) determination, however, did not hinge on the existence of a valid IQ score. Listing 12.05(C) requires a claimant to prove each of the following four essential elements:

> (1) "significantly sub-average general intellectual functioning," (2) "deficits in adaptive functioning," (3) evidence that the condition began before age twenty-two[,] and (4) a valid IQ score of seventy or below along with a "physical or other mental impairment imposing an additional and significant work-related limitation."

*Sheeks v. Comm'r of Soc. Sec.*, --- F. App'x ----, No. 13-1711, 2013 WL 6084279, at *2 (6th Cir. Nov. 20, 2013) (quoting 20 C.F.R., Pt. 404 Subpt. P, App. 1 § 12.05(C)). A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. 20 C.F.R. 404 Subpt. P, App. 1 § 12.05. *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *cf. McClellan v. Astrue*, 804 F.Supp.2d 678, 682 (E.D. Tenn. 2011) ("[A] qualifying IQ score is not enough to satisfy Listing 12.05[;] . . . a claimant must also meet the elements of the diagnostic description.")

Here, as set forth above, the ALJ's decision makes clear that his Listing 12.05(C) determination turned on Plaintiff's inability to establish the requisite deficits in adaptive

6

functioning given the record evidence of her functional abilities. (*See* R. at 23–29 (adopting Dr. Wyatt's opinion that Plaintiff did not have the requisite functional deficits to satisfy Listing 12.05(C) despite her low IQ scores, discussing at length Plaintiff's level of adaptive functioning, and explicitly stating that his findings were "grounded on [Plaintiff's] functional ability").) Notably, Plaintiff does not challenge the ALJ's determination with regard to this essential element.

In sum, because Dr. Slater's evaluation addresses only one essential element of Listing 12.05(C) and does not undermine the ALJ's findings with regard to the deficits-in-adaptive-functioning essential element, the Undersigned finds that Plaintiff has failed to satisfy her burden to establish with a reasonable probability that the ALJ's would have altered his determination that Plaintiff was no longer disabled if he had considered the evaluation. *See Winters v. Comm'r of Soc. Sec.*, No. 98-1991, 2000 WL 712353, at *2 (6th Cir. May. 22, 2000) (rejecting claimant's claim for a sentence six remand to consider results of a new IQ test, finding that she could not satisfy the materiality requirement because she had not shown that her mental impairment satisfied other essential elements of Listing 12.05(C)); c*f. Sheeks*, 2013 WL 6084279 at *4–5 (remand not appropriate where the record evidence the claimant relied upon established "a mere toehold . . . on an essential element of [Listing 12.05(C)]" and did not otherwise address the remaining essential elements of the Listing). It is therefore **RECOMMENDED** that Plaintiff's Motion for Remand be **DENIED**.

### IV.

For the reasons set forth above, it is **RECOMMENDED** that Plaintiff's Motion for Remand be **DENIED** and that the Commissioner's decision be **AFFIRMED**. (ECF No. 11.)

### V.

7

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report an recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waiver.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

Date:  December 9, 2013                             /s/ *Elizabeth A. Preston Deavers*
                                                                        Elizabeth A. Preston Deavers
                                                                        United States Magistrate Judge

8